JOHN H. CLIFFORD, as Substituted Trustee under the Last Will and Testament of CYRUS E. LEE, Deceased, Plaintiff, *v.* UNITED STATES TRUST COMPANY OF NEW YORK, Defendant.

First Department, November 3, 1922.

**Banks and banking — action for accounting to recover funds, withdrawn by trustees in violation of testamentary trust — testator directed deposit of funds in defendant bank and payment of stated sum from income and in part from principal if necessary — withdrawn funds were invested at higher rate — defendant bank not bound to inquire as to terms of trust, not put upon inquiry, and not liable for withdrawal.**

Where by the terms of a testamentary trust the trustees were required to deposit the funds in the defendant bank, and to pay a stated sum to the beneficiary yearly from the income, and if that was not sufficient in part from the principal, the defendant bank was under no obligation to inquire as to the terms of the trust when the trustees deposited the trust moneys with it as trustees on October 3, 1889, and it issued to them a certificate of deposit, nor was there anything shown by the record which put it upon inquiry as to the terms of the trust.

Accordingly, the defendant is not liable for withdrawals made by the original trustees for the purpose of investing the money in higher interest paying securities, as it did not have any knowledge whatever of the terms of the trust, nor did it in any way participate in the disposition of the trust moneys or derive any advantage from the withdrawal of the deposit.

SUBMISSION of a controversy upon an agreed statement of facts pursuant to section 546 of the Civil Practice Act.

*Curtis, Fosdick & Belknap* [*James F. Curtis* of counsel], for the plaintiff.

*Stewart & Shearer* [*W. A. W. Stewart* of counsel], for the defendant.

GREENBAUM, J.:

One Cyrus E. Lee died a resident of New Bedford, Bristol county, Mass., on March 15, 1889, leaving a will which was probated by the Probate Court for the county of Bristol. By his will the deceased, after giving certain pecuniary legacies, bequeathed the entire residue of his personal estate to his wife, Hannah H. Lee, and devised all of his real property to Joseph H. Thompson and John F. Hamilton in trust as follows:

" To dispose of the same by sale and deposit the proceeds thereof in the United States Trust Company of New York City for the benefit of my wife for and during her natural life and to pay to her the income annually accruing therefrom and in case the said income does not in any year amount to the sum of $800, I direct the said trustees to pay to her from the principal so much as when added to said income shall amount to said sum. Upon the death of my wife I give and devise all the rest of my estate of whatsoever kind to the said Joseph H. Thompson, his heirs and assigns forever."

The trustees, after disposing of the testator's real estate, deposited the proceeds of the sale, amounting to $15,122.63, with the defendant, receiving in exchange therefor a certificate of deposit issued to them in their names as trustees of the estate of Cyrus E. Lee, deceased, which provided for the payment of interest thereon at the rate of three per cent. Instead of complying with the provisions of the trust, the trustees withdrew substantial sums under the certificate of deposit and invested $9,000 thereof by acquiring in their names, as trustees, assignments of first and second mortgages covering certain real property in Brooklyn.

Subsequently and on or about the 16th day of September, 1898, the said Joseph H. Thompson and John F. Hamilton resigned as trustees, and Joseph H. Thompson, Jr., a son of the said Joseph H. Thompson, was duly appointed by the Probate Court as substituted trustee under the said trust, and duly qualified as such trustee.

It appears that in the judicial resignation proceedings which were had Joseph H. Thompson and John F. Hamilton duly filed their accounts as trustees, which accounts described the investments which the trustees had made from the proceeds of the trust moneys, and stated that all the parties in interest in the estate were served with notice of the proceedings, including Mrs. Lee, who

11

joined with all the other persons in interest in signing a paper which stated that they had " examined the foregoing account " and that they " request that the same be allowed without further notice." In this connection, however, it should be noted that it appears that Hannah H. Lee was born in September, 1842, and that " except as indicated by her signature appearing upon the trustee's account of September 15, 1898, as set forth in paragraph 14 hereof, she was, until shortly before the beginning of this action, ignorant of the breaches of trust and the surrounding circumstances, as hereinbefore set forth."

The agreed statement shows that Hannah H. Lee received from Thompson and Hamilton as trustees during their trusteeship the full sum of $800 per annum to which she was entitled under the terms of the will of Cyrus E. Lee and thereafter during the trusteeship of Thompson, Jr., and up to and including February, 1918, she also received the full sum of $800 per annum. In other words, it is agreed by the parties that, although the trustees had violated the strict provisions of the will which required the proceeds of the sale of the real estate to be left on deposit with the United States Trust Company upon the terms mentioned in the trust, by the withdrawal of moneys from the certificate of deposit and reinvesting them in mortgages, the life tenant as matter of fact has yearly received $800; and it is expressly conceded that if she had been paid $800 per annum under the terms of the trust, interest upon the principal sum of $15,122.63 deposited with the defendant trust company, being limited to three per cent, such fund would have been entirely exhausted by February, 1918. It thus appears that neither the trust estate nor any person interested therein has suffered any loss through defendant's act in permitting the trustees to withdraw deposits which they had made with the defendant, since the life tenant actually received more than she possibly could have received had the terms of the trust been strictly carried out. Of course, if the trustees had made any profits during their trusteeship, they would be answerable to Mrs. Lee for such profits. But that question is not before us.

It is the contention of the plaintiff that he is entitled to judgment against the United States Trust Company for an accounting and to receive payment from it of the amounts of the respective several withdrawals made by the trustees upon the ground that the company was under the obligation or duty to the life tenant, Mrs. Lee, to become familiar with the terms of the trust and not to permit any withdrawals from the deposit made from the sale of the real property unless they were withdrawn in strict compliance with the terms thereof.

We are of the opinion that there was no duty or obligation cast upon the defendant trust company to inquire as to the terms of the trust when the trustees deposited the trust moneys with it as trustees and it issued to them, as trustees, the certificate of deposit. There is no circumstance mentioned in the agreed statement of facts from which the court would be justified in finding that the trust company was put upon any inquiry as to the terms of the trust. In *Bischoff* v. *Yorkville Bank* (218 N. Y. 106) the New York rule was stated as follows: "A fiduciary may legally deposit the trust funds in a bank to his individual account and credit. Knowledge on the part of the bank of the nature of the funds received and credited does not affect the character of the act. The bank has the right to presume that the fiduciary will apply the funds to their proper purposes under the trust. There are judicial decisions, in cases in which the fiduciary has converted the funds, which hold the contrary. ( *United States Fidelity & Guaranty Co.* v. *People's Bank,* 127 Tenn. 720; *Bank of Hickory* v. *McPherson,* 102 Miss. 852.) "

The court further stated: " Inasmuch as the defendant knew that the credits to Poggenburg created by the proceeds of the checks were of a fiduciary character and were equitably owned by the executor, it had not the right to participate in a diversion of them from the estate or the proper purposes under the will. Its participation in a diversion of them would result from either (a) acquiring an advantage or benefit directly through or from the diversion, or (b) joining in a diversion, in which it was not interested, with actual notice or knowledge that the diversion was intended or was being executed, and thereby becoming privy to it."

*Bischoff* v. *Yorkville Bank* (*supra*) was decided on May 2, 1916, and in that connection it may be pertinent to note that on May 18, 1916, the Legislature passed an act (Laws of 1916, chap. 588) which went into effect on September 1, 1916, amending the Code of Civil Procedure in relation to duties of persons having fiduciary relations towards estates of decedents by adding subdivision 7 to section 2574 of the Code of Civil Procedure so as to read as follows: " Where such executor, administrator, guardian or trustee mingles the funds of such estate with his own or deposits the same with any person, association or corporation authorized to do business under the Banking Law, in an account other than as such executor, administrator, guardian or trustee," the surrogate may make a decree revoking the letters testamentary, etc., without a petition or the issuance of a citation. Section 2664-a of the Code, added by the same statute, became a law at the same time and reads as follows: " Every executor, administrator, guardian or testamentary

trustee shall keep the funds and property received from the estate of any deceased persons separate and distinct from his own personal fund and property. He shall not invest the same or deposit the same with any person, association or corporation doing business under the Banking Law or other person or institution, in his own name, but all transactions had and done by him shall be in his name as such executor, administrator, guardian or testamentary trustee. Any person violating any of the provisions of this section shall be guilty of a misdemeanor."

The amendments just quoted are now embodied in section 104, subdivision 7, and in section 231 of the Surrogate's Court Act. Since the deposit in the instant case was made with the defendant on October 3, 1889, it seems to us that the rule stated in *Bischoff* v. *Yorkville Bank* (*supra*) must control.

There is no suggestion in this case that the defendant as depositary had the slightest knowledge or information of the terms of the trust or that it in any way participated in the disposition of the trust moneys or derived any advantages from the withdrawal of the deposit.

It follows that defendant is entitled to a judgment, without costs.

Clarke, P. J., Smith, Merrell and Finch, JJ., concur.

Judgment ordered for defendant, without costs. Settle order on notice.